## Borough Sewers.

*Boroughs — Sewers — Arrangements with State normal schools—Cost of construction—Rentals—Acts of May 14, 1915, July 6, 1917, and June 7, 1919.*

1. Under the General Borough Code of May 14, 1915, P. L. 312, a borough can only enter into agreements with municipalities and townships for the construction of sewers. It cannot enter into a contract with a State normal school for that purpose.

2. Under the Act of July 6, 1917, P. L. 704, a borough may construct a sewer and retain title thereto and accept from a corporation or individual a fixed sum for the construction cost in lieu of annual rental.

3. If a portion of the property to be served lies in a neighboring township, the borough may construct the sewer under the Act of June 7, 1919, P. L. 426, and charge the owner with an annual rental, but it cannot accept from the owner a part of the construction cost.

4. The words "municipalities, persons and corporations," as used in the Act of June 7, 1919, P. L. 426, are broad enough to include State normal schools.

Attorney-General's Department. Opinion to the Department of Health.

McNees, Dep. Att'y-Gen., Nov. 23, 1922.—This department has received your inquiry as to the legal right of the Borough of Slippery Rock to enter into an agreement with Slippery Rock Normal School for the construction and operation of a public sewer, and also as to the same rights of West Chester Borough to enter into a similar agreement with the West Chester Normal School.

The facts are the same in both cases, except that a considerable part of the property of the Slippery Rock Normal School, which would be served by the proposed sewer, lies in Slippery Rock Township, adjoining Slippery Rock Borough, while in the West Chester case all of the property of West Chester Normal School, which is to be served by the proposed sewer, lies within West Chester Borough.

2 D. & C.

The proposition in each case is for the borough and the normal school trustees to enter into an agreement to share the cost of construction of the sewers. This would immediately raise a question as to the title to them after their completion. I am inclined to think that such an arrangement would not be legal, nor would it be a practical solution of the difficulty. There is, however, a method provided by law whereby boroughs may enter into an agreement for a reimbursement for part of the cost of such sewer construction.

The General Borough Code of May 14, 1915, P. L. 312, in chapter 6, article XII, section 13, gives boroughs authority to enter into agreements with municipalities or townships for the purpose of building sewers and sewage disposal plants. This right does not extend to agreements between boroughs and any persons or corporations other than municipalities or townships. Its provision for the joint maintenance of such a sewer, as well as for the actual construction thereof, would, therefore, be limited to agreements between boroughs and other municipalities or townships. This act, however, was later supplemented by the addition of a further section in 1917, which provides as follows: "Whenever any borough has constructed, wholly or partially, any sewer or sewer system, or has acquired the same at public expense, the council of such borough may provide, by ordinance, for the collection of an annual rental or charge for the use of such sewer or sewer system from the owners of property served by it. Such council may, at their discretion, in lieu of such annual rental or charge, provide for the payment by such owner of a fixed sum:" Borough Code, article XII, chapter 6, as supplemented by the Act of July 6, 1917, § 15, P. L. 704.

Under this act, it appears that a borough may proceed to construct such a sewer as the one under consideration, and may thereafter, by ordinance, fix a certain sum which owners of property adjacent to such sewer are bound to pay to the municipality. Title to the sewer, the responsibility for its continued operation and proper maintenance would rest with the borough. They would be relieved of a part of the cost of construction by a contribution, such as they might fix, from the property owners. While I do not believe the later sections of the act providing for liens against the property so charged would be effective against State-owned property, I understand that the normal schools in both of these cases are willing to pay the amounts assessed against them, and that, therefore, enforced collection would not be necessary.

It, therefore, appears that West Chester Borough may proceed to construct such a sewer, having at the same time an understanding with the West Chester Normal School as to what proportion they shall pay, and that it may thereafter, by ordinance, fix such an amount, and that such an amount may legally be paid by the normal school authorities to the borough. It should be borne in mind that title to said sewer is entirely in the Borough of West Chester.

As to Slippery Rock Borough, we find that the fact that a part of the property to be served lies in Slippery Rock Township will not prohibit the borough from entering into a contract with the Slippery Rock Normal School. Authority for such a contract is not found in the same act of assembly. It is conferred, however, by the Act of June 7, 1919, P. L. 426, which reads as follows: "That whenever any borough is maintaining and operating a sewerage system and sewage purification or disposal works, it shall be lawful for such borough to supply sewerage service to municipalities, persons and corporations outside the limits of such borough, and to enter into contracts for such service at rates not less than those required to be paid by persons and corporations within the limits of such borough, but no such privilege shall

conflict with the rights of any sewer company or the rights of any other borough."

I am satisfied that "municipalities, persons and corporations" were intended to be broad enough to include a State normal school, and that this act gives ample authority to the Borough of Slippery Rock to make an arrangement similar to that above approved in the West Chester case, except that in the Slippery Rock case the contract should provide for service payments rather than a contribution to the original cost. The working out of an equitable service charge will not be difficult.

I am of the opinion, therefore, that both of these boroughs may enter into such agreements with their respective normal schools for sewerage service as are outlined above.          From Guy H. Davies, Harrisburg, Pa.